598   PEOPLE ex rel. ROME, W. & O. R. R. CO. v. HICKS.

Fifth Department, June Term, 1886.

THE PEOPLE OF THE STATE OF NEW YORK ex
rel. THE ROME, WATERTOWN AND OGDENSBURG
RAILROAD COMPANY, Appellant, v. WARREN HICKS
and Others, as Assessors, etc., of the Town of Ontario,
Wayne County, Respondents and Appellants.

SAME v. MELVILLE M. EDDY and Others, as Assessors,
etc., of the Town of Williamson, Wayne County, Respond-
ents and Appellants.

SAME v. WILLIAM BANCROFT and Others, as Assessors,
etc., of the Town of Webster, Monroe County, Respond-
ents and Appellants.

*Review of assessments of a railroad — when the value should be determined from the net
earnings of the road — mode of computing the net earnings — of determining the
value per mile — what objections cannot be first taken on the appeal.*

In proceedings instituted by the relator, a railroad company, to review an assess-
ment made by the town assessors, the court at Special Term reduced the
assessment imposed upon the main track of the relator upon the ground that
certain sums should have been deducted from the earnings of the relator in
determining its net earnings.

The method adopted by the court was based upon the average of the earnings
for the preceding five years, and consisted in deducting from the gross earnings:

(1) the net earnings of its freight cars on other roads;
(2) the value of the use of its freight cars on its own road at the same rate;
(3) the amount received from rentals of its real property not used in its business;
(4) interest at the rate of five per cent upon the value of its side tracks;
(5) interest at the rate of five per cent upon the value of its coaches and cars,
other than freight cars;
(6) interest at the rate of five per cent on the value of its locomotives;
(7) interest at the rate of five per cent upon the value of its depots, docks, sheds
and lands outside of the main track not rented but used in its business.

This residue was capitalized at five per cent, and that sum, divided by the num-
ber of miles in length of such track, was fixed upon as its value per mile.

*Held*, that in the absence of any evidence tending to show that the results of the
five years' business did not fairly indicate its present financial importance, or
of mismanagement tending to show that the earnings failed to represent reason-
ably the productive character of the road, or that there existed undeveloped
facilities upon which to found, or which necessarily required an estimate of
present value in addition to that produced by the net earnings, the General
Term could not say that the method of estimate adopted by the Special Term
was erroneous.

The length of the relator's road, including its branches and leased lines, was 417 8-100 miles, of which that of the leased lines was 36 58-100, and that of its other branches 96 37-100. The rent paid for the leased lines exceeded largely their net earnings. To ascertain the value per mile the court divided the sum of the capitalized average net earnings per annum for the five years by the whole number of miles of road, less the leased lines.

*Held,* that it did not err in so doing.

It was urged by the appellant that the relator had not proper y presented its proofs to the assessors on the third Tuesday of August, and then sought to have the assessment reviewed and reduced.

*Held,* that as it did not appear from the record that this objection had been raised at Special Term, it could not be first taken upon the appeal.

APPEALS from orders of the Monroe Special Term, modifying and reducing assessments, as made by the assessors in the several towns named in the above titles.

These are proceedings by *certiorari* under Laws of 1880, chapter 269, to review assessments made in the year 1883 :

In the town of Ontario there are $6\frac{23}{100}$ miles of the main track of the relator's road, which was assessed at the rate of $12,000 per mile................... $74,760 00

And its branches and side tracks, and its other real estate in the town........................... 12,644 00

$87,404 00

In town of Williamson, main track, $5\frac{92}{100}$ miles, assessed at ................................... $90,000 00

And its other real estate ....................... 1,448 00

$91,448 00

In the town of Webster, main track, $9\frac{11}{100}$ miles, assessed at $11,000 per mile.................... $100,210 00

And its other real estate ....................... 2,850 00

$103,060 00

The relator instituted these proceedings to reduce the assessments. And the assessments of the main line were reduced to $9,767.70 per mile. In other respects the assessments remain as made by the assessors. Both parties appeal.

*Edmund B. Wynn,* for the relator.

*S. D. Bentley,* for the defendants.

BRADLEY, J. :

The referee to whom the matters were referred to take the proofs and report them, with his opinion thereon, for the aid of the court in the determination of the issues, by his conclusion and opinion, expressed the view that the prayer of the relator's petition should be denied.  The court adopted the views of the referee in the main, but concluded that he had erroneously omitted to deduct certain sums from the earnings of the relator, and by such deduction the court produced the modification reducing the assessments of the main track of the relator's roads in the respective towns.

This modification of the assessments was found wholly upon the net earnings of the relator's road, and based upon the average of such earnings for the five years ending with the 30th of September, 1883. The methods of computation was to deduct from the gross earnings :

*First.* The net earnings of freight cars on other roads   This was an item produced by the receipt of three-quarters of one cent per mile for each freight car which passed upon or over roads of other companies.

*Second.* The value of the use of its freight cars on its own road at the same rate.

*Third.* The amount received from rentals of its real property not used in its business.

*Fourth.* Interest at the rate of five per cent upon the value of its side tracks.

*Fifth.* Interest at the rate of five per cent upon the value of its coaches and cars other than freight cars.

*Sixth.* Interest at the rate of five per cent on the value of its locomotives.

*Seventh.* Interest at the rate of five per cent upon the value of its depots, docks, sheds and land outside of the main track, not rented but used in its business.

And the residue, after making such deductions, are treated as the net earnings of the main track of the road.  This is capitalized at five per cent, and that sum divided by the number of miles in length of such track, and thus is obtained its value per mile.   This system of esti-

PEOPLE ex rel. ROME, W. & O. R. R. CO. v. HICKS. 601

Fifth Department, June Term, 1886.

mate and deduction was based upon the annual average of the five years before mentioned, and is in accordance with the method contended for by the relator to ascertain the value of its main line, but its objection to the computation as made is that the net earnings should be capitalized at six instead of five per cent, and that the interest to produce the several items of reduction should also be at the rate of six instead of five per cent.

The methods and means adopted to ascertain the value by which the assessments were reduced are challenged by the defendants. The same rule applies to this as to other property, and the assessors were required to assess the property " at its full and true value, as they would appraise the same in payment of a just debt due from a solvent debtor. (1 R. S., 393, § 17, as amended by Laws of 1851, chap. 176.)

There evidently is difficulty in reaching a correct conclusion of the value of such property as that in question, and it may be equally difficult to demonstrate in many cases that assessments made of property of that character are or are not proper estimate of its value. The assessors have access to the annual reports of the companies, and aided by them and such other information as is accessible, they make their assessments, and, as appears in these cases, they do not in the several towns correspond.

The estimate of value of any portion of the road cannot be intelligently made without some knowledge or information of it as a whole, and its business, earnings and ordinary expenses. Railroads are constructed with a view mainly to revenue and profit upon investments. And hence the productive capacity and its earnings are matters for consideration in the estimate of their value. And the extent to which actual net earnings of a road should govern or aid such estimate is dependent upon circumstances. No arbitrary method can be prescribed of ascertaining value. In some cases the earnings of a road may be entitled to much more consideration than in others. The cost of the road is also usually to be taken into account, and the value depends much upon relations present, and in reasonable contemplation, because the value of property may considerably be dependent upon defined unappropriated means and facilities for increased business connections and relations and the importance of the consequences to follow.

602 PEOPLE ex rel. ROME, W. & O. R. R. CO. v. HICKS.

FIFTH DEPARTMENT, JUNE TERM, 1886.

While these are in some degree speculative, they may upon the best judgment of men affect the value of property. A road with no present net earnings may have a substantial value beyond that of the land it occupies, and the timber and iron on its bed. The value of the portions of the road in the respective towns must necessarily be estimated as part of the whole of which they are essential parts. And the average net earnings of the entire line of a railroad for a number of consecutive years may properly be shown to aid the estimation of the value of the several portions of it. And when the value of its main line is in question, the net earnings creditable to that alone can very properly be considered. As the accounts of those earnings may not and usually are not kept separate from those derived from other sources, the necessary deductions may be required to represent such result.

This question arose in *People ex rel. Ogdensburg, etc., Railroad Company* v. *Pond* (13 Abb. N. C., 1), and received consideration of the Special and General Terms. The method of making the proofs as adopted in these cases on the question of value of the section of the main line of a railroad was held competent. And the Court of Appeals held that the evidence was sufficient to authorize the court below to exercise its discretionary power and dismissed the appeal. (92 N. Y., 643.) And a like question was again considered in *People ex rel. Wallkill Valley Railroad Company* v. *Keator* (67 How., 277; affirmed, 36 Hun, 593); *People ex rel. Albany and Greenbush Bridge Company* v. *Weaver* (67 How., 477; affirmed, 34 Hun, 322); *People ex rel. Delaware and Hudson Canal Company* v. *Roosa* (2 How. [N. S.], 454).

In treating the earning capacity of this road as the proper basis of estimation of its value, and its average net annual earnings during the previous five years as the evidence of such earning capacity, we cannot say that the Special Term adopted an erroneous principle of estimate as applied to these proceedings.

There is no evidence establishing the existence of undeveloped facilities upon which to found, or which necessarily requires an estimate of present value in addition to that produced by the net earnings. And there is no evidence of mismanagement tending to show that the earnings fail to represent the reasonably productive character of the road, nor does it appear by the evidence that the

PEOPLE ex rel. ROME, W. & O. R. R. CO. v. HICKS. 603

Fifth Department, June Term, 1886.

results of the five years do not fairly indicate its present financial importance. These and all other considerations derivable from the evidence, it may be assumed, were taken into account and properly weighed by the trial court and led to the theory and method there adopted. The degree of evidence was a matter for the judgment of the trial court, and if it had determined that the proof, on the part of the relator, was insufficient to establish the facts requisite to cause any deduction, we might not have felt justified in disturbing the conclusion, but the evidence was such as to present, for the consideration of the court, the question of fact there determined.

Not only the theory and method, but the computations of the court and their results are criticised by a very thorough and skillful argument of the counsel for the defendants. The length of the relator's road, including its branches and leased lines, is $417\frac{8}{100}$ miles, of which that of the leased lines is $36\frac{58}{100}$ miles, and that of its other branches $96\frac{87}{100}$ miles. To ascertain the value per mile the court divided the sum of the capitalized average of net earnings per annum for the five years by 380.5, the whole number of miles of road less the leased lines. The rent paid for those leased lines evidently exceeds largely their net earnings. The view of the trial court was that the net earnings of the two leased branches should be credited to the other portions of the road, and the reduced divisor be adopted to ascertain their value per mile. This is one of the objections taken by the relator to the action of the court, and it is insisted that divisor should have been 417; but we think this view of the court was justified by the circumstances, and that the percentage of five, instead of six per cent, as before mentioned, was a proper exercise of judgment.

The defendant's counsel contends that the line of road, of which the portion in question is a part, should be distinguished from the other branches, on the assumption that the main line is more productive and, therefore, more valuable than they are. There is no means furnished by the evidence to make such distinction. While it must be true that more traffic passes over the main line than there does over the branches respectively, their importance as feeders and contributors to its business does not seem to necessarily require, if it permits, the discrimination suggested, for the purposes of the assessments in question, so far as appears by any evidence.

**604** PEOPLE ex rel. ROME, W. & O. R. R. CO. *v.* HICKS.

FIFTH DEPARTMENT, JUNE TERM, 1886.

They are owned by the relator, and constitute apparently necessary parts of its road.

We have carefully examined and considered all the evidence and the arguments of counsel, and deem it unnecessary to refer in detail to the many points of criticism on the merits. And while it may be somewhat difficult to clearly demonstrate that the Special Term was entirely correct in the conclusion reached, we fail to find that the result was reached by any violation of law or without the support of evidence, and, therefore, adopt such conclusion on the merits. (*People ex rel. R. R. Co. v. Keator*, 36 Hun, 592.)

The question whether the other lands in the town were assessed on the same roll proportionately less than that of the relator was a question of fact arising out of a conflict of evidence, upon which it is deemed to have been properly disposed of by the decision of the trial court. The issues seem to have been presented by the petitions and returns, whether the relator properly presented proofs before the assessors on the third Tuesday of August and sought a review and reduction of the assessments. It is now urged that such application and proofs is a necessary prerequisite to a proceeding to review by *certiorari*. And in support of that contention is cited *People ex rel. Mutual Union Telegraph Company* v. *Commissioners* (99 N. Y., 254).

We deem it unnecessary to, and do not, determine that question because it does not appear by the record that it was raised at Special Term. While it might properly be considered in support of a decision of the trial court, it is otherwise, when for the first time it is sought to be raised on review for predication of error. There is no support for the contention on behalf of the town of Webster that the court had no jurisdiction to grant the writ. It was granted on the tenth of September upon a petition of date September third. The time within which application might be made for it was fifteen days after the assessment-roll was completed and delivered and notice thereof given by the assessors. (Laws of 1880, chap. 269, § 2.) The statute requires that the roll be completed and delivered to the town clerk on or before the first of September, and that public notice thereof be forthwith given, etc. (Id., § 9.) There is no evidence other than the allegation in the return to the writ of the time of completion of the roll. It is there

alleged that it was completed on the twenty-first of August and delivered to the supervisor, but it is not alleged when it was delivered to the town clerk, or when notice was given, or that either was done.    Nor was any such question raised at Special Term.

The orders should be affirmed.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Order in each case affirmed, without costs.